S. Peter Serrano
United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BILLY GENE PINSON<br><br>Defendant. | Case No.: 2:22-CR-120-SAB<br><br>Plea Agreement<br><br>Fed. R. Crim. P. 11(c)(1)(C) |

Plaintiff United States of America, by and through S. Peter Serrano, United States Attorney the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, and Defendant, BILLY GENE PINSON ("Defendant"), both individually and by and through Defendant's counsel, Federal Defender Justin Lonergan, agree to the following Plea Agreement.

### Introduction

Defendant is presently charged in the Eastern District of Washington by Indictment, filed on September 8, 2022, with Production and Attempted Production of Child Pornography, in violation 18 U.S.C. § 2251(a), (e) (Counts 1-8), Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Counts 9-10), and Commission of a Felony Sex Offense by an Individual Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A (Count

PLEA AGREEMENT - 1

11).

Defendant was previously charged by the State of Washington, in and for the County of Grant, with Rape of a Child in the First Degree, in violation of RCW 9A.44.073 (Case No. 19-1-00201-13); and Rape of a Child in the First Degree – 3 counts, in violation of RCW 9A.44.073 (Case No. 19-1-00548-13). Those charges were dismissed without prejudice during the pendency of this federal case. Those charges, and others based on the same reports and investigation, could be re-filed.

Defendant wishes to resolve the pending federal and state charges as part of a single, global resolution. The United States Attorney's Office for the Eastern District of Washington and the Grant County, Washington, Prosecuting Attorney's Office agree to such a resolution, as set forth herein.

1.    Guilty Plea and Maximum Statutory Penalties

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Defendant agrees to enter a plea of guilty to Counts 1 through 6 of the Information filed contemporaneously with this Plea Agreement, which charges Defendant with Production of Child Pornography (Counts 2-4), in violation of 18 U.S.C. § 2251(a), (e), a Class B felony, Possession of Child Pornography (Counts 1, 5), in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), a Class C felony, and Commission of a Felony Sex Offense by an Individual Required to Register as a Sex Offender (Count 6), in violation of 18 U.S.C. § 2260A, a Class C felony.

Defendant understands that the following potential penalties apply:

Counts 1, 5:

    a.    a term of imprisonment of not more than 20 years;

    b.    a fine not to exceed $250,000;

    c.    a term of supervised release of not less than 5 years, up to life;

    d.    restitution;

    e.    a $100 special penalty assessment;

PLEA AGREEMENT - 2

f.    an assessment of up to $17,000 pursuant to 18 U.S.C. §2259A(a)(3);

g.    an assessment of $5,000, pursuant to the Justice for Victims of Trafficking Act of 2015, unless the Court finds Defendant to be indigent; and

h.    registration as a sex offender.

Counts 2-4:

a.    a term of imprisonment of not less than 15, but no more than 30, years;

b.    a fine not to exceed $250,000;

c.    a term of supervised release of not less than 5 years, up to life;

d.    restitution;

e.    a $100 special penalty assessment;

f.    an assessment of up to $50,000 pursuant to 18 U.S.C. §2259A(a)(3);

g.    an assessment of $5,000, pursuant to the Justice for Victims of Trafficking Act of 2015, unless the Court finds Defendant to be indigent; and

h.    registration as a sex offender.

Count 6:

a.    a term of imprisonment of 10 years, consecutive to the sentence imposed for Counts 2-4 of the Information;

b.    a fine not to exceed $250,000;

c.    a term of supervised release of not less than 5 years and up to life;

d.    restitution;

e.    a $100 special penalty assessment;

PLEA AGREEMENT - 3

    f.    an assessment of $5,000, pursuant to the Justice for Victims of Trafficking Act of 2015, unless the Court finds Defendant to be indigent; and

    g.    registration as a sex offender.

2.    <u>Supervised Release</u>

Defendant understands that a term of supervised release must be imposed in this case. Defendant further understands that if he violates any condition of supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>Washington State Charges</u>

The Grant County Prosecutor has agreed to not re-file the dismissed charges referenced herein, and not to file additional charges based on the same underlying reports and investigation, if Defendant does not breach this federal Plea Agreement and is sentenced in accordance with the terms of this federal Plea Agreement.

PLEA AGREEMENT - 4

4.   The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.   sentencing is a matter solely within the discretion of the Court;

b.   the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.   Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon, and Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

5.   Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

PLEA AGREEMENT - 5

b.      a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.      removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.      no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.      Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.      the right to a jury trial;

b.      the right to see, hear and question the witnesses;

c.      the right to remain silent at trial;

d.      the right to testify at trial; and

e.      the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

PLEA AGREEMENT - 6

7.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), (e), the United States would have to prove the following beyond a reasonable doubt:

Count 2:

a.    *First*, at the time of the offense, Minor Victim 2 and Minor Victim 3 were each under the age of 18;

b.    *Second*, between on or about July 28, 2015, and on or about October 22, 2018, within the Eastern District of Washington, Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Minor Victim 2 and Minor Victim 3 to take part in sexually explicit conduct for the purpose of producing visual depictions of such conduct; and

c.    *Third*, the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer or cell phone.

Count 3:

a.    *First*, at the time of the offense, Minor Victim 4, Minor Victim 5, and Minor Victim 6 were each under the age of 18;

b.    *Second*, between on or about July 26, 2014, and on or about January 25, 2018, within the Eastern District of Washington, Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Minor Victim 4, Minor Victim 5, and Minor Victim 6 to take part in sexually explicit conduct for the purpose of producing visual depictions of such conduct; and

c.    *Third*, the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting

PLEA AGREEMENT - 7

interstate or foreign commerce by any means, including by computer or cell phone.

Count 4:

    a.    *First*, at the time of the offense, Minor Victim 7 and Minor Victim 8 were each under the age of 18;

    b.    *Second*, between on or about February 9, 2014, and on or about July 31, 2016, within the Eastern District of Washington, Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Minor Victim 7 and Minor Victim 8 to take part in sexually explicit conduct for the purpose of producing visual depictions of such conduct; and

    c.    *Third*, the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer or cell phone.

The United States and Defendant agree that in order to convict Defendant of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), and to apply the increased statutory maximum penalty set forth in 18 U.S.C. § 2252A(b)(2), the United States would have to prove the following beyond a reasonable doubt:

Count 1:

    a.    First, between on or about July 15, 2014, and on or about March 21, 2019, in the Eastern District of Washington, Defendant knowingly possessed a visual depiction of child pornography;

    b.    Second, Defendant knew the production of such visual depiction involved the use of a minor, namely, Minor Victim 1, engaging in sexually explicit conduct;

PLEA AGREEMENT - 8

     c. Third, the visual depiction had been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

     d. Fourth, the visual depiction of child pornography involved one or more prepubescent minor or minors who had not achieved 12 years of age.

Count 5:

     a. First, on or about September 26, 2017, in the Eastern District of Washington, Defendant knowingly possessed a visual depiction of child pornography;

     b. Second, Defendant knew the production of such visual depiction involved the use of a minor, namely, Minor Victim 9 and other minors, engaging in sexually explicit conduct;

     c. Third, the visual depiction had been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

     d. Fourth, the visual depiction of child pornography involved one or more prepubescent minor or minors who had not achieved 12 years of age.

Count 6:

The United States and Defendant agree that in order to convict Defendant of a violation of 18 U.S.C. § 2260A, the United States would have to prove the following beyond a reasonable doubt.

     b. *First*, on or about the dates alleged in the Information as to Counts 2, 3, and 4, in the Eastern District of Washington, Defendant committed violations of 18 U.S.C. § 2251(a), (e), as pleaded to herein;

PLEA AGREEMENT - 9

    c.    *Second*, at the time Defendant committed the 18 U.S.C. § 2251 violations, Defendant was required by Federal or other law to register as a sex offender.

8.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On March 21, 2019, Minor Victim 3 (hereinafter "MV3"), then six years old, disclosed to a paraeducator at school that she shared a bed with Defendant at the residence her family shared with Defendant and his family, in Moses Lake, Washington, within the Eastern District of Washington (hereinafter "Defendant's residence"). MV3 indicated that her vagina hurt when Defendant tickled her. MV3 was interviewed and examined by a Sexual Assault Nurse; the results were consistent with her disclosure of sexual assault. MV3's underwear was also seized. Subsequent DNA testing conducted by the Washington State Patrol Criminal Laboratory of the interior crotch area of MV3's underwear identified four DNA profiles: two matched MV3 and Defendant; the other two were from unknown females.

The ensuing investigation resulted in four more children disclosing sexual abuse by Defendant. Minor Victim 1 (hereinafter "MV1"), then 12 years old, disclosed to her foster family that Defendant had raped her multiple times. In a forensic interview on June 22, 2021, MV1 detailed Defendant raping her vaginally and anally with his penis for years in Defendant's residence, from the approximate

PLEA AGREEMENT - 10

age of 4 to 10 years. MV1 also described Defendant turning his sexual attention to Minor Victim 2 (hereinafter "MV2"), Minor Victim 5 (hereinafter "MV5"), and Minor Victim 4 (hereinafter "MV4"). For example, MV1 saw Defendant touching MV2's pubic area in the car and raping MV2 in Defendant's residence on one occasion. MV1 also explained that Defendant undressed her and took "close-up" pictures of her naked genitals and chest with his phone on several occasions in Defendant's residence. MV1 noted observing the flash from the phone when Defendant took the pictures. On one such occasion, Defendant posed MV1 on the floor of the garage with her legs in a "W" for the close-up picture of her genitals.

MV2, then 13 years of age, was interviewed on August 1, 2019. MV2 described Defendant sexually assaulting her three times, to include anal penetration of MV2 with Defendant's penis, when her family was living with Defendant and his family, in Defendant's residence. MV2 was approximately 10 years old at the time. MV2 described Defendant taking pictures of her "private spot" and breasts when she was in MV1's room on the bed. MV2 described observing similar of MV5 and MV1, all on Defendant's phone.

MV4, then 12 years of age, was interviewed July 30, 2019. MV4 described Defendant sexually assaulting her and MV5 several times, to include vaginal penetration of MV4 and MV5 with Defendant's penis while MV4 and MV5 were living at Defendant's residence.[1] MV4 described Defendant touching her and MV5 the same way and described it as usually happening when they were trying to sleep. On one such occasion, Defendant pinned MV4's hands and body down on the couch in Defendant's living room and had sex with MV4. On another occasion, MV4 got down from the top bunk bed she regularly shared with MV2 and saw MV5 undressed and repeatedly saying stop; MV4 saw flashes on the wall

---

[1] MV4 and MV5 lived in Defendant's residence off and on beginning in February or March 2016.

PLEA AGREEMENT - 11

from Defendant taking pictures of MV5. MV4 also saw pictures on Defendant's phone of her, MV5, MV6, MV3, and MV2, in which they were all undressed.

MV5, then 10 years of age, was interviewed July 31, 2019. MV5 said that when MV2 was not around, Defendant would touch MV5 more than MV4. MV5 described Defendant making MV4 and MV5 stand up, take their picture, do things to them, and play around, which made MV5 feel funny. MV5 described a specific instance where Defendant pulled down MV5's pants, laid on top of her (both on her back and on her stomach), and that Defendant's "no-no spot" was touching MV5 in her "no-no spot," which hurt and made her feel weird, uncomfortable, funny inside, and wrong. When asked about the last time Defendant took pictures, MV5 said that Defendant made them pulldown their "chonies" (underwear) and then put his phone under their privates. MV5 said the sexual acts had been occurring since she was seven or eight years old and the photographing had been occurring since she was eight years old. All of the sexual acts and photography took place in Defendant's residence when MV5 and her family were residing there. MV5 said that Defendant took the sexual pictures of her more than five times.

On or about February 18, 2022, law enforcement was notified by a third party that they had found hard drives and a safe in Defendant's garage, and the safe contained several pictures of nude minors in sexual positions, stained little girls' underwear, ranging in size from 6 to 14, and a lock of blonde hair in a baggie. The third party turned the safe and its contents over to the Moses Lake Police Department. The bag of hair was labelled with MV2's name. Two of the pictures depicting minors in a bathtub with no water were matched to a bathroom in Defendant's residence. Fingerprints on the photographs were later found to be Defendant's fingerprints by the Washington State Patrol (WSP) Laboratory. The WSP Lab also determined DNA from semen on the underwear to be a match to Defendant.

PLEA AGREEMENT - 12

Law enforcement then obtained and executed a search warrant at Defendant's residence and seized four external hard drives (a 1TB Seagate hard drive, SN NA7GS752; a 1TB Seagate, SN 6VPGGG7J; a 2TB Seagate, SN NA5KWRX7; and a 3TB Seagate, SN W1F3179V) from a plastic tub in the garage. Also in the tub were magazines address to Defendant, a high school diploma in Defendant's name, and other items with Defendant's name on them.

Homeland Security Investigations (HSI) forensically copied and subsequently reviewed the content of Defendant's seized hard drives. On the hard drives, investigators observed images and videos of child pornography, including files depicting the Minor Victims. The files depicting the Minor Victims were created by Defendant within the Eastern District of Washington, as follows:

MV1 – at least 20 still images and one video of prepubescent MV1. Most of the images are of MV1 laying on her back with her vagina and breasts lasciviously exposed. The video, with an associated date of December 12, 2016, is of MV1 in the bathroom unclothed with her breasts and vagina lasciviously exposed.

MV2 – at least 23 files, including a still image with an associated date of October 13, 2018, depicting MV2 lying on her back, breasts exposed, legs spread, unclothed and vagina exposed; the image is taken from the perspective of between MV2's legs, just above the bed and focused on MV2's exposed vagina.

MV3 – at least 40 still images and video clips, including one, dated July 28, 2015, depicting MV3 posed on her back on a bed with her shirt lifted and vagina lasciviously exposed, and another, dated August 11, 2016, of MV3 posed on her back on the tile floor of a bathroom in Defendant's residence with her dress pulled up and her vagina exposed, and another depicting a close up clip of MV3's vagina.

MV4 – at least 16 still images and short video clips of prepubescent MV4, wherein the focus of the depictions is MV4's unclothed genitals. The dates associated with these images and video files range from July 26, 2014, to

PLEA AGREEMENT - 13

August 28, 2017. Additional video clips depict MV4 lifting up her shirt, posing, and being directed by Defendant to pose certain ways.

MV5 – at least one series of videos, all with an associated date of August 3, 2016, wherein MV5 is depicted on her back on a bed, with her shirt pulled up, exposing her breasts; two of the videos depict MV5's nude vagina, one with her legs spread, and the other with her legs in the air while the video focuses on the vaginal and anal area.

MV6 – several still images and video clips with an associated date of January 25, 2018, depicting toddler-aged MV6 lasciviously posed, laying on her back with her shirt pulled up, exposing her belly. The child's lower half is naked as she lays with her legs spread with her vagina and anus exposed to the camera. MV6 has a pacifier in her mouth. One video clip also depicts MV6 engaged in sexually explicit conduct and has an associated date of January 25, 2018.

MV7 – at least two still images depicting prepubescent MV7 lasciviously posed on her back with her legs spread, and a video, dated February 9, 2014, of Defendant talking to MV7 as Defendant changes MV7's clothes while filming MV7 from his perspective between her legs. The focus of the video is the little girl's unclothed vagina; the girl has redness around her vagina, anus, and mouth.

MV8 – several still images and one video, with an associated date of July 31, 2016, depicting Defendant and prepubescent MV8. MV8 is wearing a purple tie dye dress. Defendant moves MV8's underwear to the side and exposes her genitalia. There is one still image depicting a vantage point up MV8's skirt. She is wearing the same dress. Another image, dated September 13, 2015, depicts MV8 in a different dress; Defendant is pulling her underwear to the side, exposing her genitalia.

MV9 – a series of images with associated dates of March 4 and 6, 2017, wherein MV9 is depicted in a bathroom with her breasts exposed and fingers spreading her vagina. The last access date for the images is September 26, 2017.

PLEA AGREEMENT - 14

Defendant agrees that the devices he used to produce and store child pornography depictions were all manufactured at least in part outside the United States. Therefore, these items travelled in and affecting interstate and foreign commerce prior to Defendant's possession of the items. Defendant further stipulates and agrees that each of the Minor Victims described above were under the age of 18 at the time that he produced the images and/or videos depicting the Minor Victims engaged in sexually explicit conduct. Defendant occupied a position of trust with each of the Minor Victims and knew each Minor Victims' age at the time that he produced the child pornography depicting that Minor Victim. Finally, Defendant stipulates and agrees that all of the child pornography that he produced of Minor Victims 1-8 was produced in the Eastern District of Washington.

At all times Defendant produced child pornography depictions of the Minor Victims referenced herein, he was required to register as a sex offender. Defendant was convicted in 2013 in King County, Washington, Case No. 12-1-02700-1-KNT, of Communication of a Minor for Immoral Purposes, in violation of R.C.W. 9.68A.090(1), and in 1994 in Grant County, Washington, Case No. 94-8-00440-7, of Rape of a Child in the First Degree, two counts, in violation of R.C.W.9A.44.073. As a result of the 2013 conviction, Defendant was required to register as a sex offender for a period of ten years, commencing after his last release from confinement.[2] As provided in the 1994 Order of Disposition, Defendant is required to register as a sex offender until specifically relieved of said obligation by court order.[3]

_____

[2] *See* R.C.W. 9A.44.140(3).
[3] *See also* R.C.W. 9A.44.140(1).

PLEA AGREEMENT - 15

9.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Indictment filed on September 8, 2022.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment/Information or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement.

10.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Production and Attempted Production of Child Pornography, in violation of 18 U.S.C. §2251(a) is 32.  U.S.S.G. § 2G1.3(a)(3).

b.    Special Offense Characteristics

The United States and Defendant agree to the following offense level and enhancement calculations as to Counts 2, 3, and 4, not including grouping or unit analysis:

| Base Offense Level and Adjustments | | Guideline Section |
|---|---|---|
| Child pornography production | 32 | U.S.S.G. § 2G2.1(a) |
| Victim under 12 years old | +4 | U.S.S.G. § 2G2.1(b)(1) |
| Sexual act or sexual contact | +4 | U.S.S.G. § 2G2.1(b)(2)(A) |
| Parent/relative/legal guardian/care/custody/supervisory control of victim | +2 | U.S.S.G. § 2G2.1(b)(5) |
| Total | 42 | |

PLEA AGREEMENT - 16

The United States and Defendant agree to the following offense level and enhancement calculations as to Counts 1 and 5, not including grouping or unit analysis:

| Base Offense Level and Adjustments | | Guideline Section |
|---|---|---|
| Possession of Child Pornography | 18 | U.S.S.G. § 2G2.2(a)(1) |
| Victim under 12 years old or prepubescent | +4 | U.S.S.G. § 2G2.2(b)(2) |
| Pattern of activity | +5 | U.S.S.G. § 2G2.2(b)(5) |
| Number of images | +5 | U.S.S.G. § 2G2.1(b)(5) |
| Total | 32 | |

The United States and Defendant agree that the applicable sentencing guideline for Count 6 is U.S.S.G. § 2A3.6 and that Chapters Three and Four of the Sentencing Guidelines do not apply to this count of conviction.

The parties make no agreement about the applicability of any other specific offense characteristic adjustments or cross references.

  c. <u>Acceptance of Responsibility</u>

If Defendant clearly accepts responsibility for the offense, including all relevant conduct and conduct involved in Count 2, Defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) Defendant qualifies for a decrease under §3E1.1(a); (2) the offense is level 16 or greater; (3) Defendant has timely notified authorities of Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently; 4) Defendant enters a guilty plea at the first available court hearing after this agreement was extended to Defendant; and 5) Defendant provides complete and accurate information during the sentencing process, including but not limited to financial

PLEA AGREEMENT - 17

information being sought by the Court, United States Probation, and the United States Attorney's Office. If, before sentence is imposed, Defendant fails to meet the criteria set out in U.S.S.G. § 3E1.1 and its Commentary, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

Defendant and the United States agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

### d.     Repeat and Dangerous Sex Offender Against Minors

The United States and Defendant agree that Defendant's instant offense (Counts 2, 3, and 4) of conviction is a covered sex crime[4], that Defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction, and that Defendant engaged in a pattern of activity involving prohibited sexual conduct.[5] Therefore, Defendant's offense level shall be further adjusted according to USSG § 4B1.5.

### e.     Agreements Regarding Representations to the Court

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United

---

[4] A "covered sex crime" is (A) an offense, perpetrated against a minor, under chapters 109A, 110, or 117 of Title 18, United States Code (excluding trafficking in, receipt of, or possession of child pornography, or a recordkeeping offense), or 18 U.SC. § 1591; or (B) an attempt or a conspiracy to commit any of these (non-excluded) offenses. USSG §4B1.5 n.2.

[5] "Prohibited sexual conduct" includes "production of child pornography." §4B1.5 n.4(A)

PLEA AGREEMENT - 18

States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

      i.      The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

      ii.      The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

      iii.      The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

      iv.      The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

      v.      The United States and Defendant may each respond to any arguments presented by the other;

      vi.      In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower

PLEA AGREEMENT - 19

criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

    vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

    viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

    ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

    f.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from

PLEA AGREEMENT - 20

Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.    Incarceration[6]

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)").  Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate

---

[6] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement.  The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court.  The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing.  In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 21

disposition of the case includes a term of not less than 25, and not greater than 35, years in custody, to be followed by a life term of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court.

The United States and Defendant further agree:

a. Defendant was arrested on the related state offenses referenced herein on April 19, 2019, and released May 14, 2019.

b. Defendant was again arrested on related state offenses referenced herein on September 25, 2019.

c. The warrant on the federal indictment in this case was served on November 21, 2022. ECF No. 18.

d. Defendant appeared on the federal indictment by writ on December 1, 2022. ECF No. 12.

e. The State offenses were dismissed without prejudice on June 5, 2023.

f. Defendant may argue that he should get credit towards his federal sentence for the time served from April 19, 2019, to May 14, 2019, and from September 25, 2019, until the date of sentencing in this federal case.

g. The United States reserves the right to oppose, and make any arguments in furtherance of opposition, any argument made by Defendant pertaining to the issue of credit for time served.

Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 35 years or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if 1) the Court imposes a term of

PLEA AGREEMENT - 22

imprisonment of less than 25 years or indicates its intent to do so; or 2) the Court imposes a term of supervised release less than life or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, assessment, and conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, assessments, and conditions of Supervised Release; and that the Court will exercise its discretion in this regard.

The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, assessments, and conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that, if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

12.    Supervised Release

By statute, the Court must impose a term of supervised release of at least five years.  If the Court accepts this Plea Agreement, the Court must impose a life term of supervised release.  Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

PLEA AGREEMENT - 23

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs and as ordered by the Court where required, such as for in-patient treatment.

c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider, but excluding proscribed psychotropic medication unless ordered by the Court. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

d. Defendant shall report to the Probation Office any and all electronic communications service accounts, as defined in 18 U.S.C. § 2510(15) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. Defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation. The Probation Office is permitted to access and search any accounts using Defendant's credentials pursuant to this condition only when reasonable suspicion exists that Defendant has violated a condition of

PLEA AGREEMENT - 24

his supervision and that the accounts to be searched contain evidence of this violation.

e. Defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer with the ability to access to the Internet, and any personal computing device with the ability to access the Internet that Defendant possesses or has access to, including any internal or external peripherals. This may require temporary removal of the equipment for a more thorough inspection. Defendant shall not possess or use any data encryption technique or program. Defendant shall purchase and use such hardware and software systems that monitor Defendant's usage of any computer that has the ability to access the Internet, as directed by the Probation Officer.

f. Defendant shall not have any contact with any child under the age of 18 outside the immediate presence of an adult and approved in advance by the Probation Officer. Defendant shall not have any contact or communications of any kind with any child via telephone, the Internet, or any social media platform. Defendant shall immediately report to the Probation Officer any unauthorized contact with anyone under 18 years old.

g. Defendant shall not reside or loiter within 1,000 feet of places where children under the age of 18 congregate, which includes primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, carnivals, recreation centers, and arcades.

h. Defendant shall not possess or manufacture any sexually stimulating, sexually explicit or sexually oriented material including videos, magazines, photographs, computer generated depictions, or any other matter that depicts "sexually explicit conduct" involving children or

PLEA AGREEMENT - 25

adults, as defined by 18 U.S.C. § 2256(2). Defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, massage parlors, escort services, or strip clubs. Defendant shall not use any sex-related adult telephone number, Internet access, or social media platform. Defendant shall provide to the Probation Officer all of Defendant's telephone and Internet records to monitor compliance, at the direction of the Probation Officer.

i. Defendant shall register as a sex offender, according to the laws of each state in which Defendant resides, is employed, or is attending school. Defendant shall provide verification of compliance with this requirement to the Probation Officer.

j. Defendant shall complete a sex offender evaluation, which may include periodic psychological and polygraph testing, at the direction of the Probation Officer.

k. Defendant shall participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to Defendant's ability.

Defendant agrees that Defendant will not seek to modify any of the agreed-upon conditions set forth herein without first obtaining agreement to the modification by the United States. Defendant also agrees that Defendant will not seek to terminate a term of supervised release without first obtaining agreement to the termination by the United States. Defendant understands, acknowledges, and agrees that Defendant's filing of a motion for early termination of Supervised

PLEA AGREEMENT - 26

Release prior to such time will constitute immediate breach of this Plea Agreement, and Defendant agrees not to challenge or object to a motion by the United States seeking a judicial finding of breach. Defendant understands and acknowledges that if Defendant breaches this Plea Agreement by filing a motion for early termination of supervised release, then:

    a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b.    The United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 27

13.  Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine.  Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14.  Mandatory Special Penalty Assessment

Defendant agrees to pay the $600 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

Defendant agrees that, pursuant to the JVTA, the Court shall impose an additional mandatory special assessment of $5,000, absent a judicial finding of indigence.

Defendant agrees that, pursuant to the AVAA, the Court shall also impose, in addition to any other criminal penalty, restitution, or special assessment authorized by law, an additional assessment of up to $50,000 (Counts 2, 3, and 4), and up to $17,000 (Counts 1 and 5), as set forth in 18 U.S.C. § 2259A.  Defendant also understands and agrees that pursuant to 18 U.S.C. § 2259A(c), in determining the amount of the AVAA assessment, the Court shall consider the factors set forth in 18 U.S.C. §§ 3553(a), 3572.

Neither party may withdraw from the Plea Agreement based on the ultimate special penalty assessment(s) imposed.

15.  Restitution:

The United States and Defendant agree that restitution is required.  18 U.S.C. §§ 2259, 3663, 3663A, 3664.  Defendant acknowledges that restitution is mandatory, without regard to Defendant's economic situation, to identifiable victims who suffer ongoing injury by virtue of child pornography images

PLEA AGREEMENT - 28

depicting them circulating on the Internet indefinitely, in amounts that comport with Defendant's relative role in the causal process that underlies the general losses of the victims. *Paroline v. United States*, 572 U.S. 434 (2014); 18 U.S.C. § 2259.

Pursuant to 18 U.S.C. § 3663A(a)(3), in exchange for the United States dismissing counts and/or agreeing not to bring additional charges, Defendant voluntarily agrees to pay restitution to all victims depicted in child pornography that Defendant created, distributed, transported, received, and/or possessed, as set forth in the discovery in this case, whether or not Defendant pleads guilty to counts charging that specific conduct, and whether or not such counts are foregone pursuant to this Plea Agreement.

Defendant understands that for purposes of 18 U.S.C. § 2259, "victim" means the individual harmed as a result of a commission of the crime, including, in the case of a victim who is under 18 years of age, the legal guardian of the victim. The United States and Defendant also hereby stipulate and agree that the Court shall order full restitution, as appropriate, to any entity, organization, insurance company, individual, and/or medical provider who provided medical services and/or funds related to the treatment of any victim related to Defendant's commission of the crime to which he is pleading.

With respect to restitution, the United States and Defendant agree to the following:

a. Restitution Amount and Interest

The United States and Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 2259, 3663, 3663A and 3664, the Court should order restitution in an amount to be determined at or before sentencing, but which is not less than $3,000 per victim.[7] The interest on this restitution amount should be waived. Defendant

_____

[7] As of the date of this Plea Agreement, a report identifying known Series victims depicted in child pornography files in Defendant's collection and on his seized

PLEA AGREEMENT - 29

acknowledges that Defendant may not withdraw from the Plea Agreement based on the amount of restitution that the Court orders.

### b. Payments

The United States and Defendant agree that if the Court imposes restitution, the Court will set a restitution payment schedule based on Defendant's financial circumstances.  18 U.S.C. § 3664(f)(2), (3)(A).  Defendant agrees to pay not less than 10% of Defendant's net monthly income towards any restitution obligation.

### c. Treasure Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.  If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations.  26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

---

devices has not yet been received from the National Center for Missing and Exploited Children.  The United States anticipates receiving such report and providing restitution requests from those victims prior to sentencing.

PLEA AGREEMENT - 30

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

> d.    Obligations, Authorizations, and Notifications

The Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from the Defendant's signature on this plea agreement or the date of the Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office.  The parties agree that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

The Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

The Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

PLEA AGREEMENT - 31

Until the fine or restitution order is paid in full, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(1)(F) the Defendant understands and agrees that until a fine or restitution order is paid in full, the Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

### 15. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons Inmate Financial Responsibility Program.

### 16. Judicial Forfeiture/Abandonment

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

- a 1TB Seagate hard drive, SN NA7GS752;
- a 1TB Seagate, SN 6VPGGG7J;
- a 2TB Seagate, SN NA5KWRX7; and
- a 3TB Seagate, SN W1F3179V.

PLEA AGREEMENT - 32

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in these assets.

Defendant acknowledges that the assets listed above, which Defendant is agreeing to forfeit, are subject to forfeiture as property used or intended to be used in any manner or part to commit or to facilitate the commission of the offenses to which Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear title to these assets to the United States, and to testify truthfully in any forfeiture proceeding.

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement.

Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

<u>Abandonment</u>

Defendant agrees to abandon to the Department of Homeland Security / Fines, Penalties & Forfeitures (HSI / FP&F) all other items seized in relation to Moses Lake Police Department reports 19ML13501, 19ML03640, and 22ML02277, as identified in Discovery.

PLEA AGREEMENT - 33

Defendant agrees to take all steps as requested by the United States and HSI / FP&F to effectuate the abandonment of the assets to HSI / FP&F and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal, including destruction, of the assets.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that HSI / FP&F might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the asset. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of assets, including any such claim for attorney fees and litigation costs.

### d. Additional Violations of Law Can Void of Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

### 18. Waiver of Appeal Rights and Collateral Attack

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes, if the Court imposes a term of imprisonment consistent with the terms of this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule

PLEA AGREEMENT - 34

11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement. Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, and restitution order.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

e.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b.    The United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 35

c.   The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.   The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

f.   Notice of Sex Offender Registration

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state

PLEA AGREEMENT - 36

sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies.

Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement.

As a condition of Supervised Release, Defendant shall initially register with the state sex offender registration of the state of Defendant's release, and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of release.

g.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 37

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

S. Peter Serrano
United States Attorney

_____          10/15/25
Ann T. Wick                               Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          10/15/25
Billy Gene Pinson                         Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          15 OCTOBER 2025
Justin Lonergan                           Date
Attorney for Defendant

PLEA AGREEMENT - 38